**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE DMCA 512(h) SUBPOENA TO GOOGLE LLC | Misc. Action No. 26-27 (MN) |

**PETITIONER'S OPENING BRIEF IN SUPPORT OF**
**MOTION TO COMPEL COMPLIANCE WITH DMCA 512(h) SUBPOENA**

Dated April 27, 2026

Nima Gharavi, *pro se*
4610 North Clark St. #1098
Chicago, IL 60640
Phone: +1 (773) 899-4688
dmca@midwestwrestle.com

*Petitioner*

**TABLE OF CONTENTS**

Page

I.    NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

II.   SUMMARY OF ARGUMENT ....................................................................................... 1

III.  STATEMENT OF FACTS ............................................................................................. 2

IV.   ARGUMENT ................................................................................................................ 4

      A.    All Objections Are Waived Under Rule 45(d)(2)(B). ............................................4

      B.    Section 512(h)(3) Requires Complete Production from All Google LLC Systems..6

            1.    The Statutory Text Controls...................................................................... 6

            2.    Cox, Verizon, and Charter Addressed Threshold Qualification Only. ....... 7

            3.    AdSense Is Not a § 512(a) Conduit Provider............................................. 7

            4.    AdSense Independently Qualifies Under § 512(d). ................................... 8

            5.    Rule 45 Is Not a Workable Alternative...................................................... 9

            6.    Google LLC Is the Contracting Entity for AdSense.................................. 9

            7.    Google Failed to Address the Blogger/Blogspot Account........................ 10

V.    CONCLUSION............................................................................................................ 10

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*AF Holdings, LLC v. Does 1-1058,*
    752 F.3d 990 (D.C. Cir. 2014) ...................................................................................... 9

*Am. Elec. Power Co. v. United States,*
    191 F.R.D. 132 (S.D. Ohio 1999) ................................................................................. 5

*Barnes Found. v. Twp. of Lower Merion,*
    1997 WL 169442 (E.D. Pa. Apr. 7, 1997) ................................................................... 4

*HMV Indy, LLC v. Inovateus Solar, LLC,*
    2020 WL 3498259 (E.D. Pa. June 29, 2020) ............................................................... 6

*In re Aimster Copyright Litig.,*
    252 F. Supp. 2d 634 (N.D. Ill. 2002), *aff'd*, 334 F.3d 643 (7th Cir. 2003) ................ 7

*In re Charter Commc'ns, Inc., Subpoena Enf't Matter,*
    393 F.3d 771 (8th Cir. 2005) .................................................................................... 7, 8

*In re Subpoena of Internet Subscribers of Cox Commc'ns, LLC,*
    148 F.4th 1056 (9th Cir. 2025) ................................................................................. 7, 8

*McCabe v. Ernst & Young, LLP,*
    221 F.R.D. 423 (D.N.J. 2004) ..................................................................................... 4

*Mortellite v. Novartis Crop Prot., Inc.,*
    460 F.3d 483 (3d Cir. 2006) ......................................................................................... 9

*Nu Image, Inc. v. Does 1-23,322,*
    799 F. Supp. 2d 34 (D.D.C. 2011) .............................................................................. 9

*Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.,*
    351 F.3d 1229 (D.C. Cir. 2003) ............................................................................... 7, 8

*Reybold Grp. of Cos., Inc. v. Does 1-20,*
    323 F.R.D. 205 (D. Del. 2017) .................................................................................... 9

*SB PB Victory, LP v. Tonnelle N. Bergen, LLC,*
    2025 WL 2087779 (E.D. Pa. July 24, 2025) ............................................................... 4

*Signature Mgmt. Team, LLC v. Automattic, Inc.*,

    941 F. Supp. 2d 1145 (N.D. Cal. 2013) ................................................................. 9

*Williams v. Big Picture Loans, LLC*,

    303 F. Supp. 3d 434 (E.D. Va. 2018) ................................................................... 6

*Windstream Servs., LLC v. BMG Rts. Mgmt. (US) LLC*,

    2017 WL 1386357 (S.D.N.Y. Apr. 17, 2017)....................................................... 7

**Statutes**

17 U.S.C. § 512(a) ............................................................................................... 1, 7, 8

17 U.S.C. § 512(c) .................................................................................................. 3, 8

17 U.S.C. § 512(d) .................................................................................................. 2, 8

17 U.S.C. § 512(h) ............................................................................... 1, 2, 4, 6, 7, 8, 9

**Rules**

Fed. R. Civ. P. 45 ................................................................................................. 2, 4, 9

Fed. R. Civ. P. 45(c) ................................................................................................... 9

Fed. R. Civ. P. 45(d) ............................................................................................. 1, 2, 4

## I.    NATURE AND STAGE OF PROCEEDINGS

This is a miscellaneous proceeding to enforce a subpoena issued under 17 U.S.C. § 512(h) of the Digital Millennium Copyright Act. On March 23, 2026, the Court reviewed Petitioner's amended subpoena request and entered an affirmative order directing the Clerk to issue the subpoena (D.I. 10). The subpoena was issued on March 24, 2026 (D.I. 11), and served on Google LLC the same day. Gharavi Decl. ¶¶3, 4. The April 14, 2026 compliance deadline—21 days after service—passed without production of any kind. *Id.* ¶9. Petitioner served a formal waiver and demand letter on April 15, 2026, and in response, Google transmitted an objection letter more than ten hours later that same day—eight days after the April 7, 2026 objection deadline. *Id.* ¶¶8, 10. The April 15 letter purports to bear a date of April 6, 2026, one day before the objection deadline; however, the letter itself cites a court order entered April 8, 2026, establishing that it could not have been written on the date it purports to bear. *Id.* ¶10. Google made a partial production on April 21, 2026 consisting of YouTube and Google Account subscriber information for 22 of the 26 subpoenaed accounts. *Id.* ¶14. No AdSense subscriber information has been produced for any account. *Id.* No prior enforcement motion has been filed in this proceeding.

## II.    SUMMARY OF ARGUMENT

1. **Google waived all objections.** Rule 45(d)(2)(B) required objections by April 7, 2026. None were served. Google's objection letter is untimely under any reading of the record: transmitted on April 15, 2026—as confirmed in writing by Google's own counsel—it bears a date of April 6, 2026 but cites a court order entered April 8, 2026. The narrow circumstances courts have required to excuse untimely objections are not present.

2. **Section 512(h)(3) compels complete production.** The statute requires Google LLC— the served service provider—to produce all identifying information available to it. It contains no product-level carve-out. The circuit decisions Google invokes addressed only whether purely conduit providers qualify for § 512(h) subpoenas at the threshold level; none addressed what a qualifying provider must search within its integrated systems. AdSense is not a § 512(a) conduit provider—it is a payment processing and monetization product that stores verified identity data.

The conduit exclusion has no application to it. In the alternative, AdSense performs § 512(d) information location tool functions, independently bringing it within § 512(h)'s reach.

3. **Rule 45 is not a workable alternative.** Congress created § 512(h) as a pre-suit identification mechanism precisely because Rule 45 presupposes a filed complaint and identifiable defendants over whom personal jurisdiction can be established—conditions that cannot be satisfied when the defendants' identities are precisely what the subpoena seeks to uncover.

## III.    STATEMENT OF FACTS

The following chronology of key deadlines and events is provided for the Court's convenience.

| Date | Event |
|---|---|
| Mar. 23, 2026 | Court entered order granting amended subpoena request; directed Clerk to issue subpoena with compliance date to be filled in before service (D.I. 10). |
| Mar. 24, 2026 | Subpoena issued (D.I. 11) and served on Google by hand delivery to its registered agent in Chicago, Illinois. |
| Apr. 7, 2026 | **Rule 45(d)(2)(B) objection deadline—14 days after service. No objections served.** |
| Apr. 14, 2026 | **Compliance deadline—21 days after service. No objections served; no production made.** |
| Apr. 15, 2026 7:01 a.m. CT | Petitioner served formal waiver and demand letter on Google's counsel via email. |
| Apr. 15, 2026, 5:42–5:43 p.m. CT | Google transmitted an objection letter—first without the attachment (5:42 p.m.), then with it one minute later (5:43 p.m.). The letter purports to bear a date of **April 6, 2026**—one day before the objection deadline—but cites an order entered **April 8, 2026** that did not exist on that date. |
| Apr. 20, 2026 | **No production made** despite Google's counsel's representation that production would be made on this date. |
| Apr. 21, 2026 | Partial production received—seven days after the compliance deadline. Production covered only 22 of 26 subpoenaed accounts; AdSense and Blogger/Blogspot excluded entirely. |

Petitioner is the exclusive owner of copyrights in the original video works at issue. Gharavi Decl. ¶1. Upon identifying 25 YouTube accounts and one Blogger/Blogspot account hosting

unauthorized reproductions of those works, Petitioner submitted DMCA § 512(c)(3)(A) takedown notifications to Google LLC, which acknowledged receipt. *Id.* ¶2.

On January 27, 2026, Petitioner filed an application for issuance of a § 512(h) subpoena (D.I. 1). On February 5, 2026, Petitioner filed an amended request (D.I. 7). On March 23, 2026, the Court reviewed the amended request and entered an order granting it (D.I. 10); the amended subpoena was issued on March 24, 2026 (D.I. 11). Petitioner filled in April 14, 2026 as the compliance date and served the subpoena by hand delivery to Corporation Service Company, Google LLC's registered agent, in Chicago, Illinois, on March 24, 2026 at 10:48 a.m. Central Time. *See* Ex. 1; D.I. 12; Gharavi Decl. ¶¶3, 4. That same day, Petitioner transmitted a courtesy copy of the subpoena and the Court's order to Google's counsel, who acknowledged receipt that evening. *See* Ex. 2; Gharavi Decl. ¶5.

The April 7, 2026 objection deadline passed without any objections served. Gharavi Decl. ¶9. On April 6, 2026, Google requested a videoconference; the parties conferred on April 9, 2026, during which Google stated it anticipated producing subscriber information from YouTube, Blogger/Blogspot, and Google Account systems and providing an objection letter addressing AdSense. *Id.* ¶¶6–7. Petitioner memorialized those statements in writing the same afternoon. *See* Ex. 3 at 3–4.

The April 14, 2026 compliance deadline also passed without any production or written objections served. Gharavi Decl. ¶9. On April 15, 2026, at 7:01 a.m. Central Time, Petitioner transmitted a formal waiver and demand letter. *See* Ex. 4; Gharavi Decl. ¶8. That evening, at 5:42 p.m. and 5:43 p.m. Central Time, Google LLC's Legal Investigations Support transmitted two emails—the first without the letter attached, the second with it. *See* Ex. 5; Gharavi Decl. ¶10. The April 15 letter bears a date of April 6, 2026, and cites *In re DMCA Section 512(h) Subpoena to Google LLC*, No. 25-mc-80164-WHO, Order Re Discovery Dispute (N.D. Cal. Apr. 8, 2026)—an order that did not exist on April 6, 2026. *Id.* Google confirmed in writing that same evening of April 15 that it had "anticipated" production and objections to have been transmitted "prior to the date listed on the face of the subpoena" and was looking into why that had not occurred. Ex. 3 at

3

1; Gharavi Decl. ¶6. On April 16, 2026, Google advised that it anticipated producing on April 20, 2026. *Id.*; Gharavi Decl. ¶13.

No production was made on April 20, 2026. Gharavi Decl. ¶13. On April 21, 2026, at 11:57 p.m. Central Time, Google produced YouTube and Google Account subscriber information for 22 of the 26 subpoenaed accounts—but no AdSense subscriber information for any account, no information for the Blogger/Blogspot account, and no information for @Notfunnybjj or @sportsmodelsmoviestars. *Id.* ¶14.

## IV.    ARGUMENT

### A.  All Objections Are Waived Under Rule 45(d)(2)(B).

Rule 45(d)(2)(B), incorporated by § 512(h)(6), requires a subpoena recipient to serve written objections "before the earlier of the time specified for compliance or 14 days after the subpoena is served." The subpoena was served March 24, 2026; the compliance date was April 14, 2026; the operative objection deadline was therefore April 7, 2026. No objections were served by that date. Gharavi Decl. ¶9.

The consequence is waiver. The 1991 amendments to Rule 45 extended the former 10-day objection period to 14 days "in order 'to allow a bit more time for such objections to be made,'" and that extension itself "make[s] it reasonable to construe the new time limits more strictly so that failure to timely file an objection will result in a waiver of the right to object to enforcement of the subpoena." *Barnes Found. v. Twp. of Lower Merion*, No. CIV. A. 96-372, 1997 WL 169442, at *2 n.4 (E.D. Pa. Apr. 7, 1997) (quoting Advisory Committee Notes, 1991 Amendment to Rule 45). *Accord McCabe v. Ernst & Young, LLP*, 221 F.R.D. 423, 425–26 (D.N.J. 2004); *SB PB Victory, LP v. Tonnelle N. Bergen, LLC*, No. 22-CV-05043, 2025 WL 2087779, at *3–4 (E.D. Pa. July 24, 2025).

Google's objection letter was transmitted at 5:42 p.m. Central Time on April 15, 2026— without the letter attached—and retransmitted one minute later at 5:43 p.m. Central Time with the letter attached—more than ten hours after Petitioner served a formal waiver and demand letter at 7:01 a.m. that morning, and 22 days after service of the subpoena. Gharavi Decl. ¶¶8, 10; Ex. 5.

4

The April 15 letter purports to bear a date of April 6, 2026—one day before the objection deadline—that is refuted by the letter's own contents: it cites a court order entered April 8, 2026 that did not exist on April 6. Gharavi Decl. ¶10; Ex. 5. Google confirmed in writing on April 15, 2026 that it had anticipated production and objections to have been transmitted prior to the compliance date and was looking into why that had not occurred—an admission that no timely production or objection was ever made. Ex. 3 at 1; Gharavi Decl. ¶6.

The narrow circumstances courts have required to excuse untimely objections—a facially overbroad subpoena, no reasonable opportunity to comply, and active contact specifically regarding compliance mechanics, all present together—are entirely absent here. *See Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 136–37 (S.D. Ohio 1999) (excusing untimeliness where subpoena was overbroad, non-party had only 40 employees and was simultaneously responding to multiple other subpoenas, and counsel had been in active contact for three years concerning compliance). The subpoena is precisely tailored to 26 specific accounts. Google is among the most frequently subpoenaed entities in § 512(h) proceedings nationwide and cannot claim ignorance of its obligations. The only pre-deadline contacts were Petitioner's March 24 courtesy transmission of the subpoena—which raised the precise legal arguments now before the Court and to which Google later explicitly declined to respond—and Google's April 6 request for a videoconference. *See* Ex. 2 (Petitioner's March 24 email raising substantive legal arguments regarding the scope of § 512(h) and the unavailability of Rule 45 as an alternative); Ex. 3 at 3 ("Google's objection letter will not necessary [*sic*] engage each position or argument set forth in your email."). Neither addressed the mechanics of compliance, and neither substituted for a timely written objection.

Courts have occasionally excused untimely objections where counsel actively negotiated the mechanics of voluminous productions—not where a party made a deliberate strategic choice to dispute its legal obligations rather than serve timely objections. No such negotiation occurred here. Google faced no practical obstacle to compliance; it faced only a legal disagreement of its own making. Moreover, the pre-deadline contacts gave Petitioner no notice that Google would

miss the objection deadline—to the contrary, Google affirmatively indicated it was working toward production, a representation on which Petitioner reasonably relied.

Regardless, Google's informal representations cannot substitute for a court order. Only a court order—not party agreement—can extend the objection deadline. *Williams v. Big Picture Loans, LLC*, 303 F. Supp. 3d 434, 441–42 (E.D. Va. 2018). No such order issued. "That missed deadline must have consequences or the Rule becomes meaningless." *HMV Indy, LLC v. Inovateus Solar, LLC*, No. 220-MC-52-JDW, 2020 WL 3498259, at *2 (E.D. Pa. June 29, 2020). The waiver encompasses all objections in the April 15 letter, including the GDPR objection as to @Notfunnybjj and @sportsmodelsmoviestars. Gharavi Decl. ¶14. All objections are waived.

### B.  Section 512(h)(3) Requires Complete Production from All Google LLC Systems.

Google's partial production does not moot this motion. Google's production omitted AdSense subscriber information for all 26 accounts, the Blogger/Blogspot account entirely, and the two accounts as to which it asserted a waived GDPR objection. Gharavi Decl. ¶14.

#### 1.  The Statutory Text Controls.

Section 512(h)(3) requires a service provider to produce "information sufficient to identify the alleged infringer of the material described in the notification to the extent *such information is available to the service provider*." 17 U.S.C. § 512(h)(3) (emphasis added). "The service provider" is Google LLC—the entity that received the takedown notifications and was served the subpoena—not whichever internal product Google designates as the repository for infringing content. The statute contains no product-level carve-out. AdSense data is information available to Google LLC.

Google's own partial production confirms this. When Google chose to produce, it produced YouTube and Google Account subscriber information together for each account, treating both as integrated repositories of identifying information available to the service provider. Gharavi Decl. ¶14. There is no principled basis on which AdSense data—which Google LLC holds as the contracting entity for every monetizing YouTube account—is any less "available to the service provider" than the Google Account data Google voluntarily produced.

6

### 2.  Cox, Verizon, and Charter Addressed Threshold Qualification Only.

Google's primary merits argument invokes *In re Subpoena of Internet Subscribers of Cox Commc'ns, LLC*, 148 F.4th 1056 (9th Cir. 2025) ("*Cox*"), *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229 (D.C. Cir. 2003) ("*Verizon*"), and *In re Charter Commc'ns, Inc., Subpoena Enf't Matter*, 393 F.3d 771 (8th Cir. 2005) ("*Charter*"). Each case addressed a single threshold question: whether § 512(h) subpoenas may issue to providers performing exclusively § 512(a) conduit functions—providers that transport Internet data between users, like a postal carrier delivering letters without reading or retaining them, and that cannot receive effective takedown notifications because there is nothing stored to take down. None addressed what a qualifying provider must search within its own integrated systems. Google conflates which providers are subject to § 512(h) with what a qualifying provider must produce. *Cox*, *Verizon*, and *Charter* answer only the first question. The *Verizon* court stated that "the validity of a § 512(h) subpoena still depends upon the copyright holder having given the ISP, however defined, a notification effective under § 512(c)(3)(A)." 351 F.3d at 1236. Here, all notifications were effective—they were sent to and acknowledged by Google LLC. The threshold question is not at issue. The question is scope. No circuit court has addressed it. The Court writes on a blank slate.

### 3.  AdSense Is Not a § 512(a) Conduit Provider.

The conduit exclusion applies only to providers meeting all five conditions of § 512(a): (1) transmitting material initiated by another, (2) through an automatic process without content selection, (3) without selecting recipients, (4) without maintaining non-transient copies, and (5) without modifying content. 17 U.S.C. § 512(a)(1)–(5). Courts applying this test hold it is limited to providers performing "the role of a 'conduit' for the communications of others." *In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 660 (N.D. Ill. 2002), *aff'd*, 334 F.3d 643 (7th Cir. 2003); *Windstream Servs., LLC v. BMG Rts. Mgmt. (US) LLC*, No. 16CIV5015KMWRLE, 2017 WL 1386357, at *5–6 (S.D.N.Y. Apr. 17, 2017). AdSense performs none of these functions. It is a payment processing and monetization product that stores verified legal names, physical addresses,

7

and tax identification numbers—information Google LLC is obligated to collect and verify for federal tax reporting purposes, as confirmed by its own published documentation. *See* Ex. 6. Its connection to user identity data is not transient by any definition. Extending the conduit exclusion to AdSense would sweep in a payment processing product that performs no § 512(a) transmission functions whatsoever and that exists precisely to monetize the content at issue—a result unsupported by the statute or any circuit authority.

### 4.  AdSense Independently Qualifies Under § 512(d).

In the alternative, AdSense performs information location tool functions within the meaning of § 512(d)—connecting advertisers to specific YouTube content through targeted advertising links and thereby referring users to specific online locations containing the infringing material at issue. 17 U.S.C. § 512(d). A § 512(d) provider is within § 512(h)'s reach because, unlike purely conduit providers under § 512(a), it can receive effective notification under § 512(c)(3)(A) and has a direct nexus to the infringing activity. *Cox,* 148 F.4th at 1068 ("there is no dispute that a § 512(h) subpoena may issue to a § 512(d) service provider"); *accord Charter*, 393 F.3d at 776; *Verizon*, 351 F.3d at 1237.

Google's own published documentation confirms that AdSense both receives DMCA takedown notifications and acts on them. Google states on its anti-piracy platform that through integration with its DMCA takedown notice processing tools, it will stop serving ads on pages that receive a valid DMCA notice and will also block that page from displaying any AdSense advertising in the future. *See* Ex. 6; Gharavi Decl. ¶11. Google's AdSense Publisher Policies separately confirm that responding to compliant DMCA notifications is Google's policy, and Google's own legal troubleshooter lists AdSense as a product from which copyright complaints may be filed. *Id.* AdSense thus satisfies the precise predicate for § 512(h) reach under § 512(d): it can receive effective notification regarding the infringing activity at issue and has the demonstrated ability to act on it. The verified identity data AdSense holds is therefore information available to Google LLC, the served service provider, within the plain meaning of § 512(h)(3)—the same statutory language that compels production under the primary argument in Section B.1 above.

**5.  Rule 45 Is Not a Workable Alternative.**

Google has suggested Rule 45 provides a workable alternative. It does not. Rule 45 presupposes a filed complaint and identifiable defendants over whom personal jurisdiction can be established. *See AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 995–96 (D.C. Cir. 2014). Personal jurisdiction through forum long-arm law requires knowing where the defendant is located—precisely what the subpoena seeks to uncover. *Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 38–40 (D.D.C. 2011); *see also Mortellite v. Novartis Crop Prot., Inc.*, 460 F.3d 483, 494 (3d Cir. 2006) (John Doe parties destroy diversity jurisdiction where their citizenship cannot truthfully be alleged); *Reybold Grp. of Cos., Inc. v. Does 1-20*, 323 F.R.D. 205, 212 (D. Del. 2017) (denying motion for expedited discovery to identify anonymous defendants where plaintiff "does not even know who the Defendants are, let alone what state they reside in").

Congress would not have enacted § 512(h) as a pre-suit identification mechanism if Rule 45 could serve the same function. Google's 100-mile enforcement-jurisdiction objection also fails on its own terms: § 512(h) subpoenas are satisfied through electronic production, leaving no physical compliance location, no travel burden, and none of the non-party hardship Rule 45(c)(2)(A) was designed to prevent. Section 512(h)(6) incorporates Rule 45 only "to the greatest extent practicable," *Signature Mgmt. Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145, 1151–52 (N.D. Cal. 2013), and geographic limitations that would directly contradict § 512(h)(1)'s grant of jurisdiction to "any district court" are not practicably applicable.

**6.  Google LLC Is the Contracting Entity for AdSense.**

Google's own published documentation refutes any claim that AdSense is beyond the subpoena's reach. Google LLC's AdSense support page—captioned "Contracting entity is Google LLC"—identifies Google LLC as the entity that contracts directly with AdSense publishers, collects IRS Forms W-9 and W-8, issues IRS Forms 1099 and 1042-S, and withholds taxes from AdSense payments. *See* Ex. 7; Gharavi Decl. ¶16. Google LLC is the contracting party, the tax reporting entity, and the data controller for every AdSense account. AdSense data is information available to Google LLC, the served service provider, within the plain meaning of § 512(h)(3).

9

**7.  Google Failed to Address the Blogger/Blogspot Account.**

The subpoena covers 25 YouTube accounts and one Blogger/Blogspot account—sportyboyblog.blogspot.com. *See* Ex. 1, Attachment A at 7–8; Gharavi Decl. ¶12. Google's objection letter and April 21, 2026 production both omit the Blogger/Blogspot account entirely. *See* Ex. 5; Gharavi Decl. ¶¶12, 14. Blogger stored the allegedly infringing content for that account and must produce responsive subscriber information. Google's silence does not relieve it of that obligation.

## V.  CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court enter an order: (1) declaring that all objections to the subpoena are waived; (2) compelling Google LLC to produce, within 14 days, all AdSense subscriber information responsive to the subpoena for each of the 26 identified accounts; (3) compelling Google LLC to produce subscriber information for the Blogger/Blogspot account; (4) compelling Google LLC to produce subscriber information for @Notfunnybjj and @sportsmodelsmoviestars; and (5) granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated April 27, 2026

By: */s/ Nima Gharavi*
Nima Gharavi, *pro se*
4610 North Clark St. #1098
Chicago, IL 60640
Phone: +1 (773) 899-4688
dmca@midwestwrestle.com

*Petitioner*

10

## CERTIFICATION PURSUANT TO D. DEL. LR 7.1.1

Local Rule 7.1.1 provides that "every nondispositive motion shall be accompanied by an averment of counsel for the moving party that a reasonable effort has been made to reach agreement with the opposing party on the matters set forth in the motion," and expressly exempts "civil cases involving *pro se* parties." This motion is: (1) dispositive of the entire miscellaneous proceeding, and (2) Petitioner appears *pro se*. This motion is therefore exempt from Local Rule 7.1.1 on both independent grounds.

Notwithstanding those exemptions, the parties have engaged in extensive conferral. Petitioner's March 24, 2026 email to Google's counsel raised the substantive legal questions at issue. The parties held a videoconference on April 9, 2026, at which Google previewed its positions regarding production scope, including AdSense. Petitioner memorialized that conference in writing the same afternoon. Petitioner served a formal waiver and demand letter on April 15, 2026. In response, Google confirmed its position regarding AdSense through its objection letter, transmitted April 15, 2026. Google's counsel confirmed on April 16, 2026 that production was anticipated April 20, 2026; no production was made on that date. Google made a partial production on April 21, 2026 that excluded AdSense subscriber information for all 26 accounts, any information for the Blogger/Blogspot account, and any information for @Notfunnybjj and @sportsmodelsmoviestars. The parties are at an impasse on a question of law requiring judicial resolution.

Respectfully submitted,

Dated April 27, 2026

By: */s/ Nima Gharavi*

Nima Gharavi, *pro se*
4610 North Clark St. #1098
Chicago, IL 60640
Phone: +1 (773) 899-4688
dmca@midwestwrestle.com

*Petitioner*