IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE DMCA 512(h) SUBPOENA TO GOOGLE LLC | ) ) ) ) ) | C.A. No. 26-mc-27 (MN) |

### RESPONDENT GOOGLE LLC'S OPPOSITION TO MOTION COMPEL COMPLIANCE WITH DMCA 512(h) SUBPOENA

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
began@morrisnichols.com

OF COUNSEL:

Lauren Tsuji
Todd M. Hinnen
PERKINS COIE LLP
1301 Second Avenue, Suite 4200
Seattle, WA  98101-3804
(206) 359-8000

*Attorneys for Respondent Google LLC*

May 11, 2026

TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................................... 1

II.   RELEVANT FACTUAL AND PROCEDURAL HISTORY ....................................... 1

III.  ARGUMENT ............................................................................................................ 5

      A.    Petitioner's Motion to Compel Must Be Brought in the U.S. District
            Court for the Northern District of California. ...................................................... 5

      B.    Petitioner's Request for AdSense User Data Reaches Beyond the
            Scope of Section 512(h) and Should Be Denied. .................................................. 9

            1.    Section 512(h) only authorizes subpoenas that compel a
                  service provider storing allegedly infringing material to
                  disclose identifying information. .............................................................. 9

            2.    Producing identifying information available to YouTube
                  and Blogger satisfies the Subpoena. ...................................................... 10

            3.    Petitioner's request for AdSense data is well beyond the
                  scope of Section 512(h). ........................................................................ 10

            4.    Petitioner must use a broader discovery authority to obtain
                  AdSense user data. ................................................................................ 12

      C.    Google Did Not Waive its Right to Object. ....................................................... 13

IV.   CONCLUSION ....................................................................................................... 15

i

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Canca v. Wayfair LLC*,
No. CV222518GCRLS, 2023 WL 7221148 (D.N.J. Nov. 2, 2023) .......................................14

*Chavez v. Dole Food Co., Inc.*,
836 F.3d 205 (3d Cir. 2016)..................................................................................................8

*E4 Strategic Sols., Inc. v. Pebble Ltd. P'ship*,
No. SA MC 15-00022-DOC, 2015 WL 12746706 (C.D. Cal. Oct. 23, 2015) .........................9

*Europlay, LLC v. Does*,
323 F.R.D. 628 (C.D. Cal. 2018) .......................................................................................5, 6

*Everlast Roofing, Inc. v. Wilson*,
No. 23-CV-00828, 2024 WL 5629643 (M.D. Pa. July 15, 2024) ...........................................6

*FMC Corp. v. AMVAC Chem. Corp.*,
379 F. Supp. 2d 733 (E.D. Pa. 2005) ...................................................................................8

*Hallamore Corp. v. Capco Steel Corp.*,
259 F.R.D. 76 (D. Del. 2009) ..............................................................................................6

*HI.Q, Inc. v. ZeetoGroup, LLC*,
No. MC 22CV1440-LL-MDD, 2022 WL 17345784 (S.D. Cal. Nov. 29, 2022) .....................6

*HMV Indy, LLC v. Inovateus Solar, LLC*,
No. 20-MC-52-JDW, 2020 WL 3498259 (E.D. Pa. June 29, 2020).....................................14

*In re Charter Commc'ns, Inc.*,
393 F.3d 771 (8th Cir. 2005) .........................................................................................10, 11

*In re DMCA 512(h) Subpoena to Google LLC*,
No. 3:25-mc-80164-WHO, ECF No. 39 (N.D. Cal. Apr. 8, 2026)................................. passim

*In re: DMCA Section 512(h) Subpoena to Facebook, Inc.*,
No. 15-MC-0654, 2015 WL 12805630 (S.D. Tex. Nov. 18, 2015).......................................7

*In re Sevier*,
No. 22-MC-80-RGA-SRF, 2022 WL 3923679 (D. Del. Aug. 31, 2022) ...............................13

*In re Subpoena of Internet Subscribers of Cox Commc'ns LLC*,
148 F.4th 1056 (9th Cir. 2025) ............................................................................9, 10, 11, 12

*In re Subpoena To Univ. of N.C. at Chapel Hill*,
367 F. Supp. 2d 945 (M.D.N.C. 2005) ................................................................................7

*Lincoln Ben. Life Co. v. AEI Life, LLC*,
    800 F.3d 99 (3d Cir. 2015)..................................................................................13

*Michalski v. Little*,
    No. 22-CV-00262-SPB, 2025 WL 2108202 (W.D. Pa. July 28, 2025)....................................14

*Music Grp. Macao Com. Offshore Ltd. v. Does*,
    82 F. Supp. 3d 979 (N.D. Cal. 2015) ....................................................................5

*Pagan v. Dent*,
    No. 21-CV-01621, 2023 WL 2226792 (M.D. Pa. Feb. 24, 2023) ............................................7

*Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*,
    351 F.3d 1229 (D.C. Cir. 2003) ..................................................................9, 11, 12

*Reybold Grp. of Cos., Inc. v. Does 1-20*,
    323 F.R.D. 205 (D. Del. 2017) ....................................................................13

*Ross v. Institutional Longevity Assets LLC*,
    No.12-102-LPS-CJB, 2013 WL 5299171 (D. Del. Sept. 20, 2013) ........................................8

*TQ Delta LLC v. 2Wire Inc.*,
    No. 13-CV-1835 (RGA), 2017 WL 9833509 (D. Del. Aug. 9, 2017) ......................................6

*Youtoo Techs., LLC v. Twitter, Inc.*,
    No. 17-MC-80006-JSC, 2017 WL 431751 (N.D. Cal. Feb. 1, 2017)......................................9

**STATUTES**

Digital Millenium Copyright Act, 17 U.S.C. § 512 *et seq.*..................................................... passim

**RULES**

Fed. R. Civ. P. 45 *et seq.*........................................................................ passim

iii

## I.    INTRODUCTION

Petitioner Nima Gharavi seeks an order compelling Google LLC ("Google") to produce additional information in response to a subpoena issued pursuant to Section 512(h) of the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 512 (the "Subpoena"). The Subpoena seeks identifying information for 24 YouTube user accounts and one Blogspot user account that posted allegedly infringing videos. Google has removed the allegedly infringing videos from the only platforms where they are hosted, YouTube and Blogger. Google also has provided Petitioner with responsive subscriber information for YouTube and has notified him that it intends to produce subscriber information for Blogger. Petitioner's Subpoena, however—contrary to the plain language of Section 512(h) and the rulings of every court to consider this issue—demands that Google also disclose identifying information from AdSense, a service that does not store, host, or maintain any of the allegedly infringing content.

This is not the first time that Petitioner has sought to stretch Section 512(h) well beyond its language and purpose. Just weeks before Petitioner filed his Motion to Compel here, Judge William H. Orrick of the U.S. District Court for the Northern District of California denied a motion to compel compliance with a substantially similar subpoena to Google. *See* Order re Discovery Dispute, *In re DMCA 512(h) Subpoena to Google LLC [N.D. Cal.]*, No. 3:25-mc-80164-WHO (N.D. Cal. Apr. 8, 2026), D.I. 39. There, Petitioner sought the same relief he now seeks here—an order compelling compliance with a Section 512(h) subpoena to Google, preceded by a takedown notice to YouTube, seeking production of account data held by AdSense. Judge Orrick concluded that because "AdSense is a distinct entity from YouTube" and "does not appear to perform any storage function," it was properly "outside the scope of a Section 512(h) subpoena." *Id.* at 1-2.

Now, in a transparent effort to avoid that prior ruling, Petitioner seeks a contrary order from this Court. But Federal Rule of Civil Procedure 45(d) requires that any motion to compel

1

compliance with a subpoena be brought in the "court for the district where compliance is required"—and here, that district is the Northern District of California. Because this Court lacks jurisdiction to enforce the Subpoena, and because the Subpoena seeks information that is well beyond what is authorized by Section 512(h), Petitioner's Motion should be denied.

## II.      RELEVANT FACTUAL AND PROCEDURAL HISTORY

On June 25, 2025, Petitioner served Google with a Section 512(h) subpoena ("First Subpoena") issued by the District Court for the Northern District of California that sought identifying information for eight YouTube users who posted allegedly infringing videos. *See* Hinnen Decl. ¶ 2. Google provided Petitioner with identifying information accessible to YouTube, the service upon which the allegedly infringing material resided, responsive to the First Subpoena. *See id.* On October 2, 2025, Petitioner filed a Motion to Compel seeking to require Google to produce information from other Google services, including AdSense, that did not store the allegedly infringing videos. *See* Hinnen Decl. ¶ 3.

On April 8, 2026, the District Court for the Northern District of California denied Petitioner's motion to compel, concluding that "AdSense . . . does not appear to perform any storage function, . . . which would put it outside the scope of a Section 512(h) subpoena power under Section 512(a)." *See In re DMCA 512(h) Subpoena to Google LLC [N.D. Cal.]*, D.I. 39 at 2-3.

While Petitioner's motion to compel compliance with the First Subpoena was still pending before the District Court for the Northern District of California, on March 24, 2026, Petitioner informed counsel for Google via email that he had served Google with a DMCA Section 512(h) subpoena ("Subpoena") issued by this Court. *See* Hinnen Decl. ¶ 5; D.I. 15-2 at 1-2. Like the First Subpoena, this Subpoena sought identifying information for 24 YouTube accounts and one Blogger account and, in addition, information from services upon which the allegedly infringing

material was not stored, including AdSense. D.I. 11. The same day, Google's counsel responded to Petitioner's email, explaining that they had not yet been asked to represent Google in connection with the Subpoena and would forward Petitioner's email to Google. *See* Hinnen Decl. ¶ 5; D.I. 15-2 at 1.

On April 6, 2026, Google's counsel emailed Petitioner, explaining that Google was working on producing information responsive to the Subpoena and proposing a meet and confer to discuss it. *See id.* ¶ 6; D.I. 15-3 at 4-5. On April 8, as noted above, the U.S. District Court for the Northern District of California ruled that Petitioner could compel Google with a 512(h) subpoena to produce only identifying information associated with the service that stored the allegedly infringing material and, specifically, that Petitioner could not compel Google to produce AdSense information because the infringing material was not stored on the AdSense service. *See In re DMCA 512(h) Subpoena to Google LLC [N.D. Cal.]*, D.I. 39 at 2-3.

The parties held a video meet and confer on April 9, 2026. Google's counsel explained that Google was preparing a production that counsel anticipated, consistent with Google's position and the Northern District of California's ruling, would consist of identifying information associated with the services upon which the allegedly infringing material was stored. *See* Hinnen Decl. ¶ 7. Google's counsel also asked Petitioner why he had obtained the Subpoena from this Court, rather than the Northern District of California where he had previously (and properly) obtained the First Subpoena to Google. *See id.*. Petitioner was unable immediately to answer that question but eventually offered that he chose this jurisdiction because its process for issuing a subpoena included review by a judge. *See id.* ¶¶ 7-8; D.I. 15-3 at 3-4. Google's counsel also informed Petitioner that the Federal Rules of Civil Procedure require that a party seeking to enforce a non-party subpoena must do so within 100 miles of the recipient which, for Google, meant that any

enforcement proceedings must be filed in the Northern District of California. *See* Hinnen Decl. ¶ 7. On April 10, 2026, counsel followed up in writing providing case citations supporting this proposition. *See id.* ¶ 8; D.I. 15-3 at 2-3.

On April 15, 2026, Petitioner transmitted a waiver and demand letter (D.I. 15-4) to Google's counsel. *See* Hinnen Decl. ¶ 9; D.I. 15-3 at 2. The same day, Google's counsel informed Petitioner that he had expected Google to make a production and provide Petitioner with objections prior to the date listed on the subpoena and was investigating the cause of the brief delay. *See* Hinnen Decl. ¶ 11; D.I. 15-3 at 1-2. On April 15, Google transmitted its objection letter (D.I. 15-5)[1] to Petitioner, and Google's counsel followed up with Petitioner via email on April 16, 2026 explaining that Google had transmitted the letter the previous day and that Google anticipated making a production on April 20, 2026 when Google's user notice period had concluded. *See* Hinnen Decl. ¶¶ 9-11; D.I. 15-3 at 1.

On April 21, 2026, Google produced the identifying information associated with the relevant YouTube accounts. *See* Hinnen Decl. Ex. 2 at 1 (Google's April 21, 2026 production cover letter). Due to an oversight, the production did not include identifying information sought by the subpoena relating to the Blogger account. *See* Hinnen Decl. ¶ 12. Because Petitioner did not meet and confer with Google after its initial production and before he filed the Motion to Compel, Google was unaware of this oversight until it received the Motion to Compel. Upon discovering the oversight, Google initiated its process for notifying the user of the Blogger account and informed Petitioner that it would produce responsive identifying information associated with the Blogger account on May 17, 2026, when the user notice period concluded. *See id.*

---

[1]   Due to a drafting error, the objection letter bore the date April 6, 2026, the date on which Google began drafting the letter, rather than April 15, the date on which Google transmitted it to Petitioner.

On April 27, 2026—without notice of further communication with Google or its counsel and almost three weeks after the District Court for the Northern District of California denied his motion to compel compliance with the First Subpoena and informed him that a Section 512(h) subpoena cannot be used to compel Google to produce AdSense information—Petitioner served Google and filed this Motion (D.I. 14) in this District seeking to compel Google to produce AdSense information.

### III.   ARGUMENT

#### A.   Petitioner's Motion to Compel Must Be Brought in the U.S. District Court for the Northern District of California.

Petitioner's Motion should be denied because he brought it in the wrong venue. Rule 45(d)(2)(B)(i) provides that any motion to compel compliance with a subpoena must be brought in the "court for the district where compliance is required[.]" For a non-party, the district where compliance is required is the one within 100 miles of where the non-party is headquartered and would respond to the subpoena. *See* Fed. R. Civ. P. 45(c)(2)(A). Because the Northern District of California is within 100 miles of where (1) Google is headquartered and (2) Google's custodians of records reside, are employed, and regularly transact business in person, any motion to compel must be brought there. *See* Hinnen Decl. ¶ 7; Fed. R. Civ. P. 45(c)(1)(A), (c)(2)(A), (d)(2)(B)(i); *see also Music Grp. Macao Com. Offshore Ltd. v. Does,* 82 F. Supp. 3d 979, 984 (N.D. Cal. 2015) (noting that there is "no question" that the proper district to hear a motion to compel compliance with a Rule 45 nonparty subpoena is where the nonparty is headquartered); *Europlay Cap. Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018) (explaining that "the proper district to hear a motion to compel is where Google is headquartered" and finding "no jurisdiction" over motion to compel filed with issuing court); *HI.Q, Inc. v. ZeetoGroup, LLC*, No. MC 22CV1440-LL-MDD, 2022 WL 17345784, at *8 (S.D. Cal. Nov. 29, 2022) ("Rule 45 expressly requires

5

minimizing the burden placed on a nonparty. Fed. R. Civ. P. 45(d)(1). That is best accomplished by resolving this dispute and requiring production of documents and deposition testimony to occur where the nonparty's principal place of business, responsive documents, and the deponent are located . . . ."). The fact that responsive records are stored online or will ultimately be produced electronically is irrelevant. *See Europlay*, 323 F.R.D. at 630 (explaining that Rule 45's 100-mile limit applies to the production of electronic records).

Courts in the Third Circuit, including the District of Delaware, have consistently recognized that where compliance is required in another district, the issuing court is without authority to enforce the subpoena.[2] *See, e.g.*, *Hallamore Corp. v. Capco Steel Corp.*, 259 F.R.D. 76, 79-80 (D. Del. 2009) (denying motion to compel where the requested documents, defendant's principal place of business, and employees with control over the responsive documents were not located in Delaware); *TQ Delta LLC v. 2Wire Inc.*, No. 13-CV-1835 (RGA), 2017 WL 9833509, at *1 (D. Del. Aug. 9, 2017) (denying motion to compel seeking production of documents from non-parties that were "not located in Delaware" where "the documents sought by the subpoena are not located here either"); *Everlast Roofing, Inc. v. Wilson*, No. 23-CV-00828, 2024 WL 5629643, at *7 (M.D. Pa. July 15, 2024) (holding that the court lacked jurisdiction to decide motions concerning compliance with subpoenas that did not require compliance in that jurisdiction); *Pagan v. Dent*, No. 21-CV-01621, 2023 WL 2226792, at *1-2 (M.D. Pa. Feb. 24, 2023) (explaining that

---

[2] Courts in this District have also held that a subpoena for production or inspection of documents *must* "issue from the court for the district where the production or inspection is to be made," and "may not require production at a location more than one hundred miles from the entity's place of business." *See* Memorandum Order, *Kabbaj v. Simpson*, C.A. No. 12-1322-RGA/MPT (D. Del. Mar. 7, 2013), D.I. 42 at 8-9 (finding subpoena to Google "void on [its] face" where it listed a place of compliance and was issued by a court other than the "district court where the witness resides or where the headquarters of the witness are located"). Here, in addition to seeking compliance in the wrong venue, Petitioner's Subpoena lists the place of compliance as Chicago, Illinois. This is yet another reason for the Court to deny Petitioner's Motion.

"the federal rules expressly limit the court's subpoena power to command a nonparty to attend a deposition or produce documents" and concluding that only the Southern District of California could compel compliance with subpoena directed to non-party with its principal place of business in San Diego).

That the Subpoena issued pursuant to Section 512(h) makes no difference because "the procedure for issuance and delivery of [a § 512] subpoena . . . shall be governed to the greatest extent practicable by those provisions of the Federal Rules of Civil Procedure governing the issuance, service, and enforcement of a subpoena duces tecum." 17 U.S.C. § 512(h)(6). Nothing in Section 512 displaces Rule 45(d)(2)(B)(i), its animating rationale (to avoid unduly burdening non-parties) applies equally to a Section 512(h) subpoena, and Petitioner cites no authority to support his assertion that application of Rule 45's geographical limitations "would directly contradict § 512(h)(1)'s grant of jurisdiction to 'any district court'" and would "not [be] practicably applicable." D.I. 14 at 9. This assertion is meritless, and courts in other circuits that have considered similar arguments routinely hold that Rule 45's geographical limitations apply to Section 512(h) subpoenas. *See, e.g.*, *In re: DMCA Section 512(h) Subpoena to Facebook, Inc.*, No. 15-MC-0654, 2015 WL 12805630, at *3, *7 (S.D. Tex. Nov. 18, 2015) (rejecting contention that Rule 45(c) does not apply to Section 512(h) subpoenas and holding that Rule 45 requires party seeking enforcement "to go to a court in the district in which Facebook 'resides' to obtain a § 512(h) subpoena"); *see also In re Subpoena To Univ. of N.C. at Chapel Hill*, 367 F. Supp. 2d 945, 957 (M.D.N.C. 2005) (explaining that although Section 512 permits a copyright holder to seek a subpoena in any district court, it does not state that "every district court has jurisdiction to issue a subpoena compelling action from persons outside of the district").

The concerns underlying Rule 45(d)(2)(B)(i)'s geographical limitations are all the more pressing in light of Petitioner's blatant forum shopping. Petitioner chose to file his Motion in the District of Delaware, as opposed to the Northern District of California, in an effort to evade Judge Orrick's recent order denying his motion to enforce an earlier subpoena to Google, which held that "a Section 512(h) subpoena is the wrong vehicle for Gharavi's goals." *See In re DMCA 512(h) Subpoena to Google LLC*, ECF No. 39 at 2-3. There, as here, Petitioner's goal was improperly to acquire information from AdSense via a Section 512(h) subpoena served on Google. The Third Circuit has recognized that such "[b]latant forum shopping or gamesmanship" may warrant dismissing a later-filed action with prejudice. *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 221 (3d Cir. 2016); *cf. Ross v. Institutional Longevity Assets LLC*, No.12-102-LPS-CJB, 2013 WL 5299171, at *4 (D. Del. Sept. 20, 2013) (explaining that transfer may be warranted to deter "'forum shopping' by plaintiffs who seek to avoid prior rulings or governing precedents in other jurisdictions"), *report and recommendation adopted*, No. 12-102-LPS-CJB, 2013 WL 5613998 (D. Del. Oct. 11, 2013); *FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733, 747 & n.25 (E.D. Pa. 2005) (explaining that filing in another district to avoid an adverse result in the local circuit is treated as forum shopping or forum avoidance).

Accordingly, there is no basis for permitting Petitioner to attempt to enforce his Subpoena in this Court. The Court should deny Petitioner's Motion and, if he so chooses, he can bring it in the proper jurisdiction–the Northern District of California.[3]

---

[3]    Whether the Motion to Compel should be heard by this Court is a determination to be made in the first instance by the Northern District of California. *See* Fed. R. Civ. P. 45(f) ("When the court where compliance is required did not issue the subpoena it may transfer a motion . . . to the issuing court . . . if the court finds *exceptional circumstances*." (emphasis added)); *Youtoo Techs., LLC v. Twitter, Inc.*, No. 17-MC-80006-JSC, 2017 WL 431751, at *1 (N.D. Cal. Feb. 1, 2017) ("[W]hether to transfer a subpoena-related motion is committed to the discretion of the court where compliance is required."); *see also* Fed. R. Civ. P. 45(f) Advisory Comm. Note to 2013 Amend.

**B.**    **Petitioner's Request for AdSense User Data Reaches Beyond the Scope of Section 512(h) and Should Be Denied.**

As explained above, the Court should deny Petitioner's Motion as procedurally improper–brought in the wrong jurisdiction–and leave adjudication of the merits to the Northern District of California. If the Court determines Petitioner's Motion is proper, the Court should deny the Motion because it purports to compel disclosure by a service provider (AdSense) that did not store the allegedly infringing material and therefore falls outside of Section 512(h)'s narrow, limited authority.

**1.**    **Section 512(h) only authorizes subpoenas that compel a service provider storing allegedly infringing material to disclose identifying information.**

Section 512(h) provides a narrow, limited pre-suit mechanism that permits a subpoena to issue only to a service provider that received a takedown notification for allegedly infringing material stored on its services. *See In re Subpoena of Internet Subscribers of Cox Commc'ns LLC*, 148 F.4th 1056, 1063 (9th Cir. 2025) ("*Cox*") ("The 512(h) subpoena provision is inextricably intertwined with the [takedown] notification . . . ."). Whether such a subpoena may compel a provider depends on the "role" or "function" the provider performs "with respect to the infringement at issue." *Id.* at 1067. As the D.C., Eighth, and Ninth circuits have uniformly held, Section 512(h) subpoenas are "structurally linked" to storage and thus can only be used to compel

---

("[T]he proponent of transfer bears the burden of showing that such circumstances are present" and "[t]he prime concern should be avoiding burdens on local nonparties subject to subpoenas"). Petitioner cannot satisfy this burden. There is nothing "exceptional" about his Motion requiring it to be heard by this Court. For example, Petitioner cannot point to any related discovery or case management orders and has not identified any other reason why he cannot seek the same relief in the Northern District of California. *Cf. E4 Strategic Sols., Inc. v. Pebble Ltd. P'ship*, No. SA MC 15-00022-DOC (DFMx), 2015 WL 12746706, at *3 (C.D. Cal. Oct. 23, 2015) (explaining that courts consider factors including "the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation" (citation modified)).

disclosure of user information by providers that store allegedly infringing material that they could remove in response to takedown requests. *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1237 (D.C. Cir. 2003) ("*Verizon*"); *In re Charter Commc'ns, Inc.*, 393 F.3d 771, 777 (8th Cir. 2005) ("*Charter*"); *Cox*, 148 F.4th at 1062-63.

> **2.    Producing identifying information available to YouTube and Blogger satisfies the Subpoena.**

Here, YouTube and Blogger are indisputably the only service providers upon whose systems the allegedly infringing videos were stored. Upon receipt of takedown requests issued by Petitioner, YouTube and Blogger effectuated the takedown notification and removed the allegedly infringing videos. On April 21, 2026 Google produced subscriber identifying information from YouTube. *See* Hinnen Decl. Ex. 2 at 1. Google has also informed Petitioner that it intends to produce subscriber identifying information from Blogger upon expiration of user notice on May 17, 2026. Hinnen Decl. ¶ 12. That is all the information that Petitioner is entitled to receive in response to this limited form of subpoena, and production of this information fully satisfies Google's obligations under Section 512(h).

> **3.    Petitioner's request for AdSense data is well beyond the scope of Section 512(h).**

Petitioner contends—contrary to the plain language of Section 512(h), the consistent interpretation by every circuit court to consider the question, and Judge Orrick's recent order denying his motion to compel compliance with a virtually identical subpoena—that Google must disclose not only the identifying information associated with users' YouTube and Blogger accounts, but also users' identifying information from "[a]ll Google LLC [s]ystems." D.I. 14 at 6. Specifically, he demands that Google produce identifying information available to AdSense. *See id.*

However, unlike YouTube and Blogger, AdSense is not a content-hosting service and did not perform the function of storing the allegedly infringing videos. AdSense is, instead, an advertising and monetization service that is separate and distinct from YouTube and Blogger. *See* Declaration of Austin Vonderheid ("Vonderheid Decl.") ¶¶ 6, 9. Users form a separate relationship with AdSense by agreeing to AdSense Terms and Policies. *See id*. ¶ 10. Users can use AdSense without using YouTube and/or Blogger, and can use YouTube and/or Blogger without using AdSense. *See id*. ¶¶ 7-8. In fact, AdSense account holders can use AdSense to generate revenue from *any* website hosting their content, not just YouTube and Blogger; even websites and services not owned by Google. *Id.* ¶ 8.

Judge Orrick concluded that AdSense is outside the scope of Section 512(h) because AdSense is a distinct service that performs a function that does not involve storage of the allegedly infringing material. *See In re DMCA 512(h) Subpoena to Google LLC [N.D. Cal.]*, D.I. 39 at 2-3 (citing *Cox*, 148 F.4th at 1067). In so doing, Judge Orrick followed the functional service provider approach required by *Cox*, *Verizon*, and *Charter* and declined Petitioner's invitation to dramatically expand the narrow, limited authority Congress created in 512(h) to every aspect of the business of a broad, corporate enterprise. *See id.* Judge Orrick rejected the very approach Petitioner urges this Court to adopt here. *See id.*

Section 512(h) does not create a broad, enterprise-wide discovery authority applicable to all products and services owned by a corporate entity; rather, it creates a narrow, limited authority applicable only to services that perform the function of storing the allegedly infringing material. *See Verizon*, 351 F.3d at 1233 ("We conclude from both the terms of § 512(h) and the overall structure of § 512 that . . . a subpoena may be issued only to an ISP engaged in storing on its servers material that is infringing or the subject of infringing activity."); *Cox*, 148 F.4th. at 1067

("What matters [in determining the scope of a 512(h) subpoena] is the function performed with respect to the alleged infringement at issue."). Because AdSense does not perform a storage function with respect to the alleged infringement at issue, Petitioner cannot use a Section 512(h) subpoena to compel Google to disclose identifying information maintained by AdSense and his Motion should be denied.[4]

### 4. Petitioner must use a broader discovery authority to obtain AdSense user data.

Petitioner complains that unless this Court compels Google to disclose its users' AdSense data in response to his 512(h) Subpoena, he will not have an effective remedy. *See* D.I. 14 at 2. Not so. As courts have observed, Section 512 is not and was not intended to be a panacea that provides a remedy to every putative copyright holder. *See Cox*, 148 F.4th at 1067; *see also Verizon*, 351 F.3d at 1233 (limiting reach of 512(h) subpoenas "only to [internet service providers] engaged in storing on its servers material that is infringing or the subject of infringing activity."). If Petitioner wants to compel a non-storing service provider like AdSense to disclose information, he must use a broader authority, like a Rule 45 subpoena, that is subject to full judicial oversight and other safeguards such as protective orders. *See* Order re Discovery Dispute at 2-3, *In re DMCA 512(h) Subpoena to Google LLC [N.D. Cal.]*, D.I. 39 at 2-3 (explaining that a "Rule 45 subpoena

---

[4]    Petitioner briefly asserts that (1) AdSense is not a Section 512(a) "conduit provider" and (2) "AdSense performs information location tool functions within the meaning of § 512(d)" and therefore is within the scope of Section 512(h). D.I. 14 at 7-8. However, Judge Orrick concluded that AdSense qualifies as a Section 512(a) service provider outside the scope of Section 512(h)'s subpoena power because it does not perform any storage function. *See* Order re Discovery Dispute at 2-3. Moreover, Petitioner himself characterizes AdSense as a "payment processing and monetization product," D.I. 14 at 7, and cites no authority supporting his assertion that AdSense "links" or "refers" users to infringing material simply by allowing advertisers to place ads on third party online platforms.

is an option for [Petitioner]" but "a Section 512(h) subpoena is the wrong vehicle for Gharavi's goals").

Petitioner's argument that a Rule 45 subpoena cannot "provide[] a workable alternative" is without merit. D.I. 14 at 9. In dismissing Petitioner's motion to compel compliance, Judge Orrick explicitly stated that "[a] Rule 45 subpoena is an option for Gharavi" once he files a complaint against a party. *In re DMCA 512(h) Subpoena to Google LLC [N.D. Cal.]*, D.I. 39 at 3. Moreover, Petitioner's concerns regarding establishing personal jurisdiction over Doe defendants for the purposes of filing such an action are unfounded since at the pleading stage, Petitioner need only allege, after a reasonable investigation and in good faith, that no Doe defendant shares his state citizenship. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107-10 (3d Cir. 2015). Google has already produced some identifying information to Petitioner, including self-declared location information and other information, such as phone numbers and IP address access history, from which location may be derived (Hinnen Decl. ¶ 11), so it simply is not the case that Petitioner "[does] not even know who the [d]efendants are, let alone what state they reside in." D.I. 14 at 9 (citing *Reybold Grp. of Cos. v. Does 1-20*, 323 F.R.D. 205, 212 (D. Del. 2017).

## C.     Google Did Not Waive its Right to Object.

Petitioner asserts despite the continuous communications with Google's counsel following service of the Subpoena, that by serving objections eight days after its April 7, 2026 deadline to object to the Subpoena, Google waived all of the objections included in its April 15, 2026 objection letter. D.I. 14 at 4-6. But courts in the Third Circuit do not treat waiver as automatic in every case and instead recognize judicial discretion to excuse untimeliness where "the respondent establishes good cause or the existence of unusual circumstances[.]" *In re Sevier*, No. 22-MC-80-RGA-SRF, 2022 WL 3923679, at *2 (D. Del. Aug. 31, 2022). Examples of such unusual circumstances include where the subpoena recipient is a non-party, where the requesting party fails to show prejudice

13

from a short delay, where there are substantive defects in the subpoena, where the non-party subpoena recipient acted in good faith, and where there was active communication between the non-party subpoena recipient and issuing party regarding compliance before a motion to compel or motion to quash is filed. *See, e.g.*, *Michalski v. Little*, No. 22-CV-00262-SPB, 2025 WL 2108202, at *2 (W.D. Pa. July 28, 2025) (considering as relevant that the requesting party "ha[d] not demonstrated any prejudice because of [the] short delay," "the subpoena itself raise[d] concerns of relevance and overbreadth," and "nothing in the record indicate[d] that [the non-party subpoena recipient] failed to act in good faith in its response to the subpoena" as reasons for excusing untimeliness); *HMV Indy, LLC v. Inovateus Solar, LLC*, No. 20-MC-52-JDW, 2020 WL 3498259, at *1 (E.D. Pa. June 29, 2020) (identifying good-faith conduct and pre-enforcement contact between the non-party subpoena recipient and issuing party as ground for forgiving untimeliness); *Canca v. Wayfair LLC*, No. CV 22-2518 (GC) (RLS), 2023 WL 7221148, at *3-4 (D.N.J. Nov. 2, 2023) (identifying subpoena recipient's non-party status, overbreadth of and burden imposed by the subpoena, and ongoing communications between the subpoena recipient and issuing party as reasons for excusing untimeliness).

Nowhere does Petitioner allege that he suffered any prejudice from the eight-day delay. Moreover, Google is a non-party and the subpoena is defective to the extent that it purports to seek information outside the scope of Section 512(h)'s narrow, limited authority. *See supra* 11-13. And while Petitioner suggests that Google was not fully and frequently engaged with him regarding the scope and propriety of the Subpoena, counsel for Google has engaged with Petitioner in good faith regarding related matters for more than eight months. *See* Hinnen Decl. ¶¶ 2-12. Counsel was first in contact with Petitioner regarding the Subpoena on March 24, 2026, and reached out to him to discuss the Subpoena on April 6, 2026. *See id.* ¶¶ 5-6; D.I. 15-2 at 1; D.I. 15-3 at 4-5. The parties

14

met and conferred via videoconference on April 9, 2026, during which counsel for Google informed Petitioner that the only proper venue to enforce compliance with the Subpoena is the Northern District of California. *See* Hinnen Decl. ¶ 7. On April 10, 2026 counsel followed up in writing to provide Petitioner case citations supporting that proposition, and communicated with him again on April 15 and 16 regarding the Subpoena and Google's forthcoming production. *See id.* ¶ 8; D.I. 15-3 at 2-3. Petitioner did not communicate further with counsel after receiving production of responsive data from Google on April 21, 2026 or before filing his Motion on April 27, 2026. *See* Hinnen Decl. ¶ 11. Petitioner thus has no grounds to claim that Google automatically waived its right to object to the Subpoena.

## IV.    CONCLUSION

For the reasons stated above, Google respectfully requests that the Court deny Petitioner's Motion against Google.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

OF COUNSEL:

Lauren Tsuji
Todd M. Hinnen
PERKINS COIE LLP
1301 Second Avenue, Suite 4200
Seattle, WA  98101-3804
(206) 359-8000

May 11, 2026

Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
began@morrisnichols.com

*Attorneys for Respondent Google LLC*

15

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 11, 2026, upon the following in the manner indicated:

Nima Gharavi (*pro se*)                           *VIA ELECTRONIC MAIL*
4610 North Clark Street, Unit #1098
Chicago, IL  60640

/s/ *Brian P. Egan*

Brian P. Egan (#6227)