**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE DMCA 512(h) SUBPOENA TO GOOGLE LLC | Misc. Action No. 26-27 (MN) |

**PETITIONER'S REPLY BRIEF IN SUPPORT OF
MOTION TO COMPEL COMPLIANCE WITH DMCA 512(h) SUBPOENA**

Dated May 18, 2026

Nima Gharavi, *pro se*
4610 North Clark St. #1098
Chicago, IL 60640
Phone: +1 (773) 899-4688
dmca@midwestwrestle.com

*Petitioner*

# TABLE OF CONTENTS

Page

ARGUMENT.................................................................................................................................1

I.     ALL OF GOOGLE'S OBJECTIONS ARE WAIVED. .................................................. 1

II.    THE COURT HAS JURISDICTION TO ENFORCE THE SUBPOENA...................... 2

       A.    The Statutory Text Requires Jurisdiction. ....................................................3

       B.    The Court Has General Personal Jurisdiction Over Google.....................................3

       C.    The Forum Shopping Characterization Is Refuted by the Record and Barred by

       Judicial Estoppel........................................................................................................4

III.   SECTION 512(h)(3) REQUIRES PRODUCTION OF ADSENSE SUBSCRIBER

INFORMATION........................................................................................................... 6

       A.    The Statutory Text Controls. .......................................................................6

       B.    Cox, Verizon, and Charter Addressed Threshold Qualification Only. .....................7

       C.    AdSense Does Not Qualify Under § 512(a); the Governing Test Was Never

       Applied. ......................................................................................................................7

       D.    Google's "Separate Relationship" Theory Collapses Under Its Own Submissions..8

       E.    The Rule 45 Alternative Is Structurally Unavailable. ..............................................9

IV.    BLOGGER SUBSCRIBER INFORMATION. .............................................................. 10

CONCLUSION............................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*AF Holdings, LLC v. Does 1-1058*,
    752 F.3d 990 (D.C. Cir. 2014) ........................................................................................ 9

*Barnes Found. v. Twp. of Lower Merion*,
    No. CIV. A. 96-372, 1997 WL 169442 (E.D. Pa. Apr. 7, 1997) ....................................... 1

*Canca v. Wayfair LLC*,
    No. CV 22-2518 (GC) (RLS), 2023 WL 7221148 (D.N.J. Nov. 2, 2023) ........................ 2

*Chavez v. Dole Food Co., Inc.*,
    836 F.3d 205 (3d Cir. 2016) ............................................................................................. 5

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ......................................................................................................... 4

*Europlay Cap. Advisors, LLC v. Does*,
    323 F.R.D. 628 (C.D. Cal. 2018) ..................................................................................... 3

*Everlast Roofing, Inc. v. Wilson*,
    2024 WL 5629643 (M.D. Pa. July 15, 2024) ................................................................... 3

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ......................................................................................................... 4

*Hallamore Corp. v. Capco Steel Corp.*,
    259 F.R.D. 76 (D. Del. 2009) ........................................................................................... 3

*HI.Q, Inc. v. ZeetoGroup, LLC*,
    No. MC 22CV1440-LL-MDD, 2022 WL 17345784 (S.D. Cal. Nov. 29, 2022) .............. 2

*HMV Indy, LLC v. Inovateus Solar, LLC*,
    No. 220-MC-52-JDW, 2020 WL 3498259 (E.D. Pa. June 29, 2020) ........................... 1, 2

*In re Charter Commc'ns, Inc., Subpoena Enf't Matter*,
    *393 F.3d 771 (8th Cir. 2005)* ..................................................................................... 7, 10

*In re DMCA § 512 Subpoena to X Corp.*,
    No. CV 25-MC-474, 2025 WL 888415 (E.D. La. Mar. 21, 2025) ................................... 4

*In re DMCA § 512(h) Subpoena to Dynadot, Inc.*,

    No. 3:25-mc-80138-TLT (N.D. Cal. Aug. 13, 2025) ........................................................ 6

*In re DMCA § 512(h) Subpoena to Google LLC*,

    No. 3:25-mc-80164-WHO (N.D. Cal. Apr. 8, 2026) ................................................. 4, 5, 7

*In re DMCA Section 512(h) Subpoena to Facebook, Inc.*,

    2015 WL 12805630 (S.D. Tex. Nov. 18, 2015) ............................................................... 3

*In re Sevier*,

    No. CV 22-MC-80-RGA-SRF, 2022 WL 3923679 (D. Del. Aug. 31, 2022) .................... 1

*In re Subpoena of Internet Subscribers of Cox Commc'ns, LLC*,

    *148 F.4th 1056 (9th Cir. 2025)* ............................................................................... 7, 10

*In re Subpoena to Univ. of N.C. at Chapel Hill*,

    367 F. Supp. 2d 945 (M.D.N.C. 2005) ............................................................................ 3

*Kabbaj v. Simpson*,

    C.A. No. 12-1322-RGA (D. Del. Apr. 8, 2013) ................................................................ 4

*Lincoln Benefit Life Co. v. AEI Life, LLC*,

    800 F.3d 99 (3d Cir. 2015) ............................................................................................... 9

*McCabe v. Ernst & Young, LLP*,

    221 F.R.D. 423 (D.N.J. 2004) ........................................................................................... 1

*Michalski v. Little*,

    No. 22-CV-00262-SPB, 2025 WL 2108202 (W.D. Pa. July 28, 2025) ............................ 2

*Music Grp. Macao Com. Offshore Ltd. v. Does*,

    82 F. Supp. 3d 979 (N.D. Cal. 2015) ............................................................................... 3

*Pagan v. Dent*,

    2023 WL 2226792 (M.D. Pa. Feb. 24, 2023) ................................................................... 3

*Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*,

    *351 F.3d 1229 (D.C. Cir. 2003)* ............................................................................... 7, 10

*Reybold Grp. of Cos. v. Does 1-20*,

    323 F.R.D. 205 (D. Del. 2017) ......................................................................................... 9

iii

*Ross v. Institutional Longevity Assets LLC*,

    No. 12-102-LPS-CJB, 2013 WL 5299171 (D. Del. Sept. 20, 2013) .................................. 5

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,

    81 F.3d 355 (3d Cir. 1996)...................................................................................... 5

*SB PB Victory, LP v. Tonnelle N. Bergen, LLC*,

    No. 22-CV-05043, 2025 WL 2087779 (E.D. Pa. July 24, 2025)....................................... 1

*TQ Delta LLC v. 2Wire Inc.*,

    2017 WL 9833509 (D. Del. Aug. 9, 2017) ........................................................ 3

*Veras v. Sirawan Transp., Inc.*,

    501 F. Supp. 3d 142 (E.D.N.Y. 2020) ................................................................ 9

*Williams v. Big Picture Loans, LLC*,

    303 F. Supp. 3d 434 (E.D. Va. 2018) ............................................................... 1

**Statutes**

28 U.S.C. § 1338(a) .................................................................................................. 9

Digital Millennium Copyright Act, 17 U.S.C. § 512 *et seq.*.................................................. passim

**Rules**

Fed. R. Civ. P. 45 *et seq.*............................................................................................. passim

## ARGUMENT

### I.    ALL OF GOOGLE'S OBJECTIONS ARE WAIVED.

As established in Petitioner's Opening Brief, D.I. 14 ("Opening Br.") at 4–6, Google's failure to serve written objections by the April 7, 2026 deadline constitutes waiver of all objections. *See Barnes Found. v. Twp. of Lower Merion*, No. CIV. A. 96-372, 1997 WL 169442, at *2 n.4 (E.D. Pa. Apr. 7, 1997); *McCabe v. Ernst & Young, LLP*, 221 F.R.D. 423, 425–26 (D.N.J. 2004); *SB PB Victory, LP v. Tonnelle N. Bergen, LLC*, No. 22-CV-05043, 2025 WL 2087779, at *3–4 (E.D. Pa. July 24, 2025). Google also failed to file a motion to quash, a separate and independently required vehicle for the challenges it now raises. *See* Fed. R. Civ. P. 45(d)(2)(B), (d)(3). Google forfeited both vehicles. Only a court order can extend the objection deadline; none issued. *Williams v. Big Picture Loans, LLC*, 303 F. Supp. 3d 434, 441–42 (E.D. Va. 2018). "That missed deadline must have consequences or the Rule becomes meaningless." *HMV Indy, LLC v. Inovateus Solar, LLC*, No. 220-MC-52-JDW, 2020 WL 3498259, at *2 (E.D. Pa. June 29, 2020).

Google's invocation of the "good cause or unusual circumstances" exception fails. *In re Sevier*, No. CV 22-MC-80-RGA-SRF, 2022 WL 3923679, at *2 (D. Del. Aug. 31, 2022). Google's own anchor case from this district denied the very exception Google now seeks. *Id.* Google is among the most sophisticated non-parties conceivable—a trillion-dollar corporation with in-house legal infrastructure and retained outside counsel at Perkins Coie, given actual notice fourteen days before the deadline. Non-party status does not shelter subpoena recipients that treat the deadline as optional. On Google's own theory, the subpoena required less work, not more, making the failure even less excusable. Petitioner's ability to pursue damages and injunctive relief against those responsible for the infringement erodes as account information changes; Congress designed § 512(h) as an expedited remedy whose efficacy depends on enforcement of the deadline. And

1

Google's merits objection is a disputed legal position, not a defect; a subpoena recipient cannot convert a contested statutory interpretation into "unusual circumstances."

Google's own footnote 1 undermines its good faith argument: Google began drafting the objection letter on April 6, 2026—one day before the April 7 deadline—then sat on it until Petitioner's demand letter arrived subsequent to Google blowing past both the objection and compliance deadlines. Gharavi Decl. ¶ 8; Ex. 4.  The pre-deadline communications concerned Google's legal position on scope—not a request for extension, not compliance mechanics, and not any notice that the deadline would be missed.  Gharavi Decl. ¶¶ 5–7; Ex. 3.  Google's cited cases— *Michalski v. Little*, No. 22-CV-00262-SPB, 2025 WL 2108202, at *2 (W.D. Pa. July 28, 2025); *HMV Indy*, 2020 WL 3498259, at *1–2 (finding waiver); *Canca v. Wayfair LLC*, No. CV 22-2518 (GC) (RLS), 2023 WL 7221148, at *3–4 (D.N.J. Nov. 2, 2023)—found no record evidence that the subpoena recipient knew the deadline was approaching, began drafting its objection letter, and then did nothing until a demand letter forced its hand. Here, the record establishes exactly that.

The geographic objection is itself waived: it appeared for the first time in the same untimely April 15 letter and is forfeited on identical grounds.  Separately, Google's own cited case agrees that the 100-mile rule is not jurisdictional. *HI.Q, Inc. v. ZeetoGroup, LLC*, No. MC 22CV1440-LL-MDD, 2022 WL 17345784, at *7 (S.D. Cal. Nov. 29, 2022).  A non-jurisdictional venue provision is waivable—and was waived here. The waiver encompasses all objections in Google's April 15 letter, including the GDPR objections as to @Notfunnybjj and @sportsmodelsmoviestars, for which Google has produced no information.

## II.    THE COURT HAS JURISDICTION TO ENFORCE THE SUBPOENA.

Section I disposes of the geographic objection before the Court reaches its merits.  The following is presented in the alternative.

### A.  The Statutory Text Requires Jurisdiction.

Section 512(h)(1) grants the right to seek a subpoena from "the clerk of any United States district court."  Section 512(h)(6) incorporates Rule 45 only "to the greatest extent practicable." Under Google's theory, only N.D. Cal. can ever enforce any § 512(h) subpoena against Google—rendering § 512(h)(1)'s "any United States district court" grant surplusage.  Congress does not enact surplusage.  Geographic limitations that would nullify § 512(h)(1)'s express grant are not practicably applicable within the meaning of § 512(h)(6).

Google's six ordinary Rule 45 civil cases—*Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979 (N.D. Cal. 2015); *Europlay Cap. Advisors, LLC v. Does*, 323 F.R.D. 628 (C.D. Cal. 2018); *TQ Delta LLC v. 2Wire Inc.*, 2017 WL 9833509 (D. Del. Aug. 9, 2017); *Hallamore Corp. v. Capco Steel Corp.*, 259 F.R.D. 76 (D. Del. 2009); *Everlast Roofing, Inc. v. Wilson*, 2024 WL 5629643 (M.D. Pa. July 15, 2024); *Pagan v. Dent*, 2023 WL 2226792 (M.D. Pa. Feb. 24, 2023)—involve no § 512(h)(1) "any United States district court" grant and no § 512(h)(6) practicability qualifier.  *Music Group* held only that N.D. Cal. is a proper forum, not an exclusive one.  Google's two § 512(h) cases—*In re Subpoena to Univ. of N.C. at Chapel Hill*, 367 F. Supp. 2d 945, 957 (M.D.N.C. 2005), and *In re DMCA Section 512(h) Subpoena to Facebook, Inc.*, 2015 WL 12805630, at *7 (S.D. Tex. Nov. 18, 2015)—addressed ISPs neither located nor incorporated in the enforcement forum. Notably, *Facebook* denied enforcement precisely because Facebook was not incorporated in S.D. Tex.—confirming that incorporation in the enforcement forum is the dispositive *Daimler* factor. *Id.* at *7.

### B.  The Court Has General Personal Jurisdiction Over Google.

Google LLC is incorporated in Delaware. *See* Supplemental Declaration of Nima Gharavi ("Supp. Gharavi Decl.") ¶ 4; Ex. 10 (Google Terms of Service identifying "Google LLC, organized

3

under the laws of the State of Delaware"). Under *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014), and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011), a corporation's state of incorporation is a paradigm all-purpose forum for general personal jurisdiction. Rule 45(c)(2)(A) permits production "at a place within 100 miles of where the person resides." Under *Daimler*, a corporation resides in its state of incorporation as a matter of constitutional law. Delaware is therefore within the 100-mile compliance zone by definition. Not one of Google's cited § 512(h) cases involves a respondent incorporated in the enforcement forum; no court has held incorporation in the enforcement forum insufficient to ground compliance jurisdiction under § 512(h) because no court has faced that question.

*In re DMCA § 512 Subpoena to X Corp.*, No. CV 25-MC-474, 2025 WL 888415 (E.D. La. Mar. 21, 2025), affirmatively supports Petitioner. The court declined *sua sponte* jurisdictional analysis until the respondent appeared and objected—confirming that such challenges must be timely raised, which Google failed to do. *Id.* at *3. The court also modified the compliance location to permit electronic production to the plaintiff's address, resolving the geographic compliance concern outright. *Id.* Google's reliance on *Kabbaj v. Simpson*, C.A. No. 12-1322-RGA (D. Del. Apr. 8, 2013), fares no better: it applied pre-2013 Rule 45 standards that no longer govern and rested on multiple independent defects not present here.

### C. The Forum Shopping Characterization Is Refuted by the Record and Barred by Judicial Estoppel.

The D. Del. subpoena was filed on January 27, 2026. Supp. Gharavi Decl. ¶ 2. Judge Orrick's order, *In re DMCA § 512(h) Subpoena to Google LLC*, No. 3:25-mc-80164-WHO (N.D. Cal. Apr. 8, 2026), Hinnen Decl. Ex. 1, D.I. 22-1 ("Orrick Order"), issued April 8, 2026—seventy-one days later. There was nothing to evade when the subpoena was filed. The documented record

establishes why D. Del. was chosen: on January 23, 2026, Petitioner received from Google's counsel the argument that Petitioner "must use a broader authority, like a Rule 45 subpoena, that is subject to **full judicial oversight** and other safeguards such as protective orders." Supp. Gharavi Decl. ¶ 2; Ex. 8 (emphasis added). That position was filed with Judge Orrick three days later. *Id.* Petitioner filed in D. Del. because its § 512(h) procedure requires Article III judicial review before issuance—squarely addressing Google's stated concern. Petitioner documented this rationale in his March 24, 2026 courtesy email transmitting the subpoena—sixteen days before Google raised the question on the April 9, 2026 videoconference—and reiterated it in writing within one hour of that call. Gharavi Decl. ¶¶ 6–7; Ex. 3.

Google's answering brief now repeats the verbatim language: Petitioner "must use a broader authority, like a Rule 45 subpoena, that is subject to full judicial oversight and other safeguards such as protective orders." Google's Answering Brief, D.I. 21 ("Answering Br.") at 12. Google *admits* the argument. Google is judicially estopped from characterizing as forum shopping the choice of a forum selected in direct response to Google's own stated litigation position, which Judge Orrick adopted. *See* Orrick Order at 2; *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996). Google's primary authority, *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205 (3d Cir. 2016) (en banc), reversed the result Google seeks and arose under the first-filed rule, which requires two pending duplicative actions on the same claims. Neither condition exists: the N.D. Cal. case reached a final order, is not pending, and covered entirely different accounts with zero overlap. Supp. Gharavi Decl. ¶ 5. *Ross v. Institutional Longevity Assets LLC*, No. 12-102-LPS-CJB, 2013 WL 5299171 (D. Del. Sept. 20, 2013), involved a plaintiff filing a second suit against the same parties on identical claims—inapposite.

Having itself argued that § 512(h) proceedings lack adequate judicial oversight, Google now accuses Petitioner of forum shopping for choosing a forum where a § 512(h) subpoena cannot issue until an Article III judge acts—a safeguard that took forty-six days here, and one that N.D. Cal. dispenses with entirely, issuing expeditiously on the clerk's signature alone. And on the merits, when a different judge in Judge Orrick's district applied the proper § 512(a) analysis, she reached the opposite conclusion. *See In re DMCA § 512(h) Subpoena to Dynadot, Inc.*, No. 3:25-mc-80138-TLT (N.D. Cal. Aug. 13, 2025), ECF No. 19 at 5–6; Supp. Gharavi Decl. ¶ 3; Ex. 9.

A forum shopper does not choose the harder, slower path.

## III. SECTION 512(h)(3) REQUIRES PRODUCTION OF ADSENSE SUBSCRIBER INFORMATION.

### A. The Statutory Text Controls.

Petitioner incorporates the statutory text analysis in Opening Br. at 6. Section 512(h)(3) requires production of information "available to the service provider"—a phrase that runs to Google LLC as the served entity without product-level limitation. Section 512(k)(1)(B) defines "service provider" to include "the operator of facilities therefor"; Google LLC operates YouTube, Blogger, and AdSense. The statute contains no product-level carve-out.

Google's own production confirms the breadth of that phrase. Google produced Google Account subscriber information alongside YouTube data for all accounts. Gharavi Decl. ¶ 14. Google Account performs **no storage function** with respect to the alleged infringement. Hinnen Decl. ¶ 7. Google's answering brief does not explain why Google Account data is within § 512(h)(3)'s scope but AdSense data is not—that silence is an admission. Google's April 21, 2026 production cover letter confirms the scope of its search: Google "conducted a diligent search for documents and information accessible on **Google's systems**"—not YouTube's systems. Hinnen

Decl. Ex. 2 (emphasis added).[1] Google addresses § 512(d) only in a footnote, without engaging Exhibit 6—Google's own documentation establishing that AdSense receives and acts upon DMCA notifications. That silence speaks for itself.

### B. Cox, Verizon, and Charter Addressed Threshold Qualification Only.

Petitioner incorporates Opening Br. at 7. *Cox*, *Verizon*, and *Charter* each addressed whether § 512(h) subpoenas may issue to purely conduit providers—the threshold question of which providers qualify. None addressed what a qualifying provider must search within its integrated systems. No circuit court has addressed production scope; Google's brief cites none because none exists.

### C. AdSense Does Not Qualify Under § 512(a); the Governing Test Was Never Applied.

Petitioner incorporates Opening Br. at 7–8. Section 512(a)'s transitory safe harbor requires satisfaction of five conjunctive statutory conditions. 17 U.S.C. § 512(a)(1)–(5). AdSense satisfies none. "Does not . . . perform any storage function," Orrick Order at 2, is not the § 512(a) test—it is not among the five statutory factors.

Judge Orrick did not apply this test. His order—consisting entirely of two paragraphs of analysis issued on constrained 2.5-page-per-party letter briefing without the full briefing available here—acknowledged "very little caselaw" to guide the analysis. A different judge in the same district, applying the proper five-factor analysis, held that a non-storage service provider does not automatically qualify for the § 512(a) safe harbor. *See* Ex. 9 at 5–6. Petitioner has appealed Judge

---

[1] Google's claim that it "effectuated the takedown notification" upon receipt, Answering Br. at 2, does not withstand scrutiny: Petitioner filed three DMCA notices beginning October 9, 2024— each identifying the infringing content by its specific URL—received repeated "unable to locate" rejections over **sixteen months**, and obtained removal only after contacting Perkins Coie directly in February 2026. Supp. Gharavi Decl. ¶ 6. This is not what good faith looks like.

7

Orrick's order to the Ninth Circuit, Case No. 26-3069, and respectfully submits it was incorrectly decided for the reasons stated herein.

### D. Google's "Separate Relationship" Theory Collapses Under Its Own Submissions.

Google argues that AdSense users form a "separate relationship" with AdSense through distinct terms of service. Answering Br. at 11; Vonderheid Decl. ¶ 10. Vonderheid's own declaration destroys this premise. He swears under penalty of perjury that "the Terms of service applicable to Blogger is located at https://policies.google.com/terms?hl=en-US." Vonderheid Decl. ¶ 10. That URL is Google LLC's own master Terms of Service—the omnibus document governing every Google product and service. Supp. Gharavi Decl. ¶ 4; Ex. 10. It identifies the service provider as "Google LLC, organized under the laws of the State of Delaware," *id.* at 3, and lists "blog posts you upload through Blogger," *id.* at 21, among the content it governs. Google admits Blogger has no separate terms of service; its users contract directly with Google LLC.

On Google's own theory, Blogger is no more "separate" from Google LLC than AdSense is—yet Google has produced YouTube data and promised Blogger data while refusing AdSense data. The "separate relationship" argument, Answering Br. at 11; Vonderheid Decl. ¶ 10, does not establish that AdSense is a different legal entity. Under the master Terms of Service structure, product-specific supplements add terms on top of a foundational Google LLC relationship; they do not introduce a different contracting party. Exhibit 7 independently confirms that AdSense's contracting entity is Google LLC. *See* Gharavi Decl. ¶ 16; Ex. 7. As § 512(h)(3) requires, information must be produced to the extent it is "available to the service provider"—a standard that runs to Google LLC without product-level limitation.

8

### E.  The Rule 45 Alternative Is Structurally Unavailable.

Google responds to Petitioner's Rule 45 Catch-22 by citing *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107–10 (3d Cir. 2015), for the proposition that Petitioner "need only allege . . . that no Doe defendant shares his state citizenship."  Answering Br. at 13.  This answers the wrong question.  The Catch-22 concerns **personal jurisdiction**—whether any court has authority to compel the Doe defendants to appear and defend. *Lincoln Benefit* addresses **diversity jurisdiction**—whether a federal court has subject matter jurisdiction based on the parties' state citizenship.  These are entirely separate doctrines, and conflating them is a fundamental error in civil procedure.

The error runs deeper still.  *Lincoln Benefit*'s diversity jurisdiction framework has no application here. Copyright claims are subject to the exclusive federal question jurisdiction of 28 U.S.C. § 1338(a). No diversity of citizenship is required in a copyright action. Google has cited a diversity case to answer a personal jurisdiction question in a federal question case.  The citation misses on every axis. *See generally Veras v. Sirawan Transp., Inc.*, 501 F. Supp. 3d 142 (E.D.N.Y. 2020) (*Lincoln Benefit*'s rule applies only to unincorporated business entities, not natural persons).

The personal jurisdiction problem is structural and remains unaddressed: the defendants' identities and jurisdictional contacts are precisely what the subpoena seeks to uncover—Petitioner cannot establish that any court has authority over people he cannot identify. *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 995–96 (D.C. Cir. 2014); *Reybold Grp. of Cos. v. Does 1-20*, 323 F.R.D. 205, 212 (D. Del. 2017) ("does not even know who the Defendants are, let alone what state they reside in").  Google's production of self-declared location fields does not resolve this—Vonderheid Decl. ¶¶ 3, 5 establish those fields are optional and unverified. Nor does the IP address access history: an IP address identifies a network connection, not a person; converting it into an

9

identifiable individual requires subpoenaing the ISP that assigned it—a § 512(a) conduit provider that *Cox*, *Verizon*, and *Charter* hold cannot be the subject of a § 512(h) subpoena. Filing a John Doe complaint to obtain a Rule 45 subpoena against that ISP is foreclosed because Petitioner cannot truthfully allege personal jurisdiction over defendants whose jurisdictional contacts remain unknown.  The IP address trail leads not to a fresh start—it leads to a statutory dead end, blocked on one side by the § 512(a) safe harbor and on the other by the personal jurisdiction requirement Google has left unanswered.  The only verified identifying information Google holds for monetizing YouTube and Blogger accounts is in AdSense.  Gharavi Decl. ¶ 16; Ex. 7.

## IV.    BLOGGER SUBSCRIBER INFORMATION.

As of the date of Petitioner's filing, Google has not produced subscriber information for the Blogger/Blogspot account, despite having committed to do so by May 17, 2026. Supp. Gharavi Decl. ¶ 7.

### CONCLUSION

For the foregoing reasons, the Court should grant Petitioner's motion to compel, hold all objections waived, and order Google to produce: (1) AdSense subscriber information for all 26 accounts; (2) Blogger/Blogspot subscriber information; (3) subscriber information for @Notfunnybjj and @sportsmodelsmoviestars; and (4) such further relief as the Court deems appropriate.

Respectfully submitted,

Dated May 18, 2026

By: */s/ Nima Gharavi*
Nima Gharavi, *pro se*
4610 North Clark St. #1098
Chicago, IL 60640
Phone: +1 (773) 899-4688
dmca@midwestwrestle.com

*Petitioner*

10