# Exhibit 8

January 26, 2026

Hon. William H. Orrick
United States District Judge
Courtroom 2 – 17th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

**VIA ECF**

**RE:** *In re DMCA Section 512(h) Subpoena to Google LLC.*, **Case No.** 3:25-mc-80164-WHO

Dear Hon. Judge Orrick:

On January 21, 2026, Petitioner Nima Gharavi ("Mr. Gharavi") and counsel for Respondent Google LLC ("Google") met and conferred via Google Meet videoconference and attempted to resolve their dispute informally. After a good faith effort, the parties have not resolved their dispute.

Pursuant to the Court's Order of January 12, 2024 [Dkt. No. 35], Mr. Gharavi and Google hereby submit their joint statement setting forth their respective positions.

**PERKINS COIE LLP**

By: /s/ Nima Gharavi

    Nima Gharavi, *pro se*

Petitioner

/s/ Lauren Tsuji

Todd M. Hinnen (*pro hac vice*)
Lauren Tsuji, Bar No. 300155
Torryn T. Rodgers, Bar No. 319126

Attorneys for Non-Party
Google LLC

**Position of Mr. Gharavi**

Under § 512(k)(1)(B), Google LLC operates YouTube's facilities, received effective notice under § 512(c)(3)(A), and judicially admitted through its certificate of interested entities [Dkt. No. 8] that no separate YouTube or AdSense entities exist—yet refuses to search the integrated systems it controls.

Google LLC qualifies as the service provider under § 512(k)(1)(B) as the operator of facilities for YouTube. The statute defines service provider to include a provider of online services or network access, or the operator of facilities therefor. 17 U.S.C. § 512(k)(1)(B). Google LLC clearly falls within this definition as the operator of YouTube's online services and the integrated facilities that enable content storage and monetization.

The factual record demonstrates functional integration across Google's systems. YouTube channel creation **requires** a *Google account*. YouTube monetization **requires** *AdSense integration*, with revenue from YouTube advertising *disbursed through* AdSense accounts linked to creators' Google accounts. Google stores and propagates user account information across YouTube, Google Account, and AdSense systems through integrated databases that synchronize automatically, enabling unified user management across Google's services. When YouTube users update account information such as email addresses, Google propagates these changes across these integrated systems. This is not manual linking of separate systems—this is automated synchronization reflecting unified data management.

Google LLC owns the infrastructure. Google LLC is the legal entity that owns or leases server hardware hosting YouTube content and maintains Internet connectivity for YouTube servers. Google LLC is listed as the registered owner for Internet Protocol (IP) address blocks 142.250.0.0/15, 172.217.0.0/16, and 2607:F8B0::/32, which are assigned to YouTube servers and serve YouTube traffic. Google LLC is also registered as the owner of Autonomous System Number (ASN) 15169—the Border Gateway Protocol (BGP) routing identifier that controls how Internet traffic reaches YouTube's servers and determines which entity operates the network infrastructure. These operational realities confirm Google LLC as the operator of facilities for YouTube under § 512(k)(1)(B).

Google's certificate of interested entities confirms no separate service providers exist. Under Civil Local Rule 3-15, Google was required to disclose entities with a financial interest in the subject matter in controversy or in a party to the proceeding. Google listed only Google LLC, XXVI Holdings Inc., and Alphabet Inc. Conspicuously absent are any YouTube or AdSense entities. If YouTube or AdSense were truly independent service providers—as Google claims—they would have substantial financial interests requiring disclosure. Their omission is a judicial admission that YouTube and AdSense are internal product names for services operated by Google LLC, not separate entities that can fragment disclosure obligations.

Google misrepresents controlling precedent. Google invokes *In re Subpoena of Internet Subscribers of Cox Commc'ns, LLC*, 148 F.4th 1056 (9th Cir. 2025) ("*Cox*"), *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229 (D.C. Cir. 2003) ("*Verizon*"), and *In re Charter Commc'ns, Inc., Subpoena Enforcement Matter*, 393 F.3d 771 (8th Cir. 2005) ("*Charter*") to argue § 512(h) reaches only the specific internal Google product storing infringing content, not other integrated systems also operated by Google. This interpretation finds no support in the cited cases.

*Cox* held only that § 512(h) subpoenas cannot compel providers performing exclusively § 512(a) transitory network functions because such providers *cannot receive* effective takedown notifications under § 512(c)(3)(A). 148 F.4th at 1067–69. The court explained that § 512(h) applies

1

to service providers performing functions under § 512(b), (c), or (d)—not § 512(a)—*with respect to the alleged infringement at issue. Id.* at 1067. The holding turned on the provider's functional role, not on permissible corporate structuring or product-based limitations. **Google** performs § 512(c) storage functions *with respect to the alleged infringement at issue. Cox* provides no support for product-based carve-outs within a qualifying provider.

*Verizon* similarly addressed which types of providers qualify for § 512(h) subpoenas, not how qualifying providers may structure internal operations to avoid compliance. The D.C. Circuit characterized as "border[ing] upon the silly" the argument that § 512(h) could possibly apply to providers performing *only* § 512(a) conduit functions. 351 F.3d at 1236. The court explained that "[d]efine all the world as an ISP if you like, the validity of a § 512(h) subpoena still depends upon the copyright holder having given the ISP, however defined, a notification effective under § 512(c)(3)(A)." *Id.* Here, all DMCA takedown notifications were effective under § 512(c)(3)(A). They were sent to and acknowledged by Google LLC using @google.com corporate email addresses. No conduit-only provider issue exists. *Verizon* does not authorize product silos within qualifying providers.

*Charter* likewise addressed whether mere conduit ISPs could be compelled under § 512(h), holding they could not because they perform only § 512(a) functions. 393 F.3d at 777. Nothing in *Charter* suggests that a provider performing § 512(c) storage functions—as Google's YouTube product admittedly does—may avoid searching integrated systems by designating certain databases as belonging to different internal products.

Google conflates two distinct questions: which service providers are subject to § 512(h), and whether qualifying providers may arbitrarily restrict searches within their integrated operations. *Cox*, *Verizon*, and *Charter* answer only the first question—providers performing storage functions under § 512(c) are subject to § 512(h), while providers performing only transitory network functions under § 512(a) are not. None of these cases authorize a qualifying provider to fragment internal integrated systems and selectively search only one component when responding to subpoenas.

Google's interpretation creates a roadmap for statutory evasion. As the § 512(k)(1)(B) service provider, Google maintains functional integration for business purposes—requiring linked accounts, synchronized data, and unified infrastructure. Yet Google simultaneously claims legal entity separation permits selective disclosure searches, rendering § 512(h) meaningless. This siloing problem would make the remedy a dead letter. The Court should reject this interpretation and affirm that the service provider—here, Google LLC—must search all systems under its operational control containing subscriber information with respect to the alleged infringement at issue. Cox, 148 F.4th at 1067.

Google claims YouTube users chose to remain anonymous by not providing name and address information to YouTube, so the information is unavailable under § 512(h)(3). But this argument assumes Google searched only YouTube-specific databases. Google's July 28, 2025 supplemental production voluntarily expanded to include Google Account data—yet after Mr. Gharavi requested AdSense information, Google reversed position, claiming § 512(h) limits searches only to its YouTube product. Moreover, Google routinely produces this exact information—including AdSense billing profiles with names and addresses—when served with subpoenas issued pursuant to expedited discovery orders in copyright cases. *Cordova v. Huneault*, No. 5:25-cv-04685-VKD, slip op. at 5:5-7 (N.D. Cal. Sept. 12, 2025). Google's disparate treatment proves the information exists in ordinary course, can be produced without undue burden, and that Google's statutory interpretation is pretextual—applied selectively based on subpoena type rather

2

than actual legal requirements. If information is unavailable in YouTube databases but available in integrated Google Account and AdSense databases that YouTube creators **must** use for channel operation and monetization respectively, § 512(h) requires searching those same integrated systems. The statute requires production of subscriber information from the *service provider*, not from an artificially constrained subset of that service provider's databases.

Google's objections are waived. **First**, Rule 45(d)(2)(B) requires written objections before the earlier of the compliance deadline or 14 days after service. Google served its first objections on July 11, 2025—two days after the July 9 deadline. *Sacks Holdings, Inc. v. Vaidya*, No. 24-mc-80197-PHK, 2024 WL 4730424, at *3 (N.D. Cal. Nov. 7, 2024). No good cause excuses this delay—courts recognize narrow exceptions only for incapacitation or severe illness, neither present here. *Id.* at *4. **Second**, even timely objections must be specific to the subpoena's circumstances; boilerplate objections are tantamount to no objections at all. *HI.Q, Inc. v. ZeetoGroup, LLC*, No. MC 22CV1440-LL-MDD, 2022 WL 17345784, at *12 (S.D. Cal. Nov. 29, 2022). Google's July 11 objections mirror generic language used in unrelated matters months earlier. **Third**, Google raised brand-new arguments during the August 15 and August 22 meet-and-confers. Rule 45 requires objections be raised all at once, *not in staggered batches*, so discovery **does not become a game**. *Taylor v. Cnty. of San Bernardino*, No. 5-21-CV-02088-JGB-SHK, 2024 WL 3915194, at *12 (C.D. Cal. May 7, 2024). All objections are waived.

Mr. Gharavi respectfully requests that the Court order Google LLC to conduct a search of all systems containing subscriber information for the YouTube accounts identified in the subpoena, including YouTube, Google Account, and AdSense databases, and produce all responsive information within thirty (30) days of the Court's order.

## Position of Google LLC

Section 512(h) creates a narrow, limited authority. It authorizes a copyright holder to request a subpoena compelling a service provider *storing allegedly infringing material* to disclose information sufficient to identify the alleged infringer to the extent such information is available to the service provider. It does not authorize a subpoena to compel service providers that transmit or perform other, non-storage roles with respect to infringing material to disclose information.

The allegedly infringing material here was hosted on YouTube. Mr. Gharavi submitted a notification of claimed infringement to Google, and YouTube removed the material. He obtained a Section 512(h) subpoena and Google produced the identifying information available to YouTube. Mr. Gharavi now argues that Google must produce identifying information available to AdSense**,** a separate service also operated by Google, that does not store the infringing material. As the statute and controlling circuit authority state, a Section 512(h) subpoena cannot compel disclosure by a service provider such as AdSense that does not store the infringing material. If Mr. Gharavi wants to compel a non-storing service provider to disclose information, he must use a broader authority, like a Rule 45 subpoena, that is subject to full judicial oversight and other  safeguards such as protective orders. Accordingly, to the extent the subpoena purports to compel Google to disclose AdSense identifying information, the subpoena should be quashed.

### Section 512(h) Only Authorizes Subpoenas that Compel a Service Provider Storing Allegedly Infringing Material to Disclose Identifying Information

Congress crafted Section 512(h) as a limited, pre-suit mechanism that permits a subpoena to  issue only to a service provider that received a takedown notification for allegedly infringing material stored on its service. *See In re Subpoena of Internet Subscribers of Cox Commc'ns LLC*,

3

148 F.4th 1056, 1063 (9th Cir. 2025) ("The 512(h) subpoena authority is inextricably intertwined with the [takedown] notification."). Whether such a subpoena may compel a provider depends on the "role" or "function" the provider performs "with respect to the infringement at issue." *Id.* at 1067. The subpoena authority applies only to a provider that stores allegedly infringing material that it could remove in response to a takedown notification. *Id.* at 1062-63. Like the Ninth Circuit, the D.C. and Eighth Circuits have held that Section 512(h) subpoenas are "structurally linked" to storage and cannot be used to compel providers performing other functions to disclose user information. *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1237 (D.C. Cir. 2003); *In re Charter Commc'ns, Inc.*, 393 F.3d 771, 777 (8th Cir. 2005).

### YouTube Has Produced the Identifying Information Available to It

Here, YouTube is the service that stored the allegedly infringing videos. YouTube is one of more than 70 products or services offered by Google.[1] YouTube effectuated the takedown notification, removing the videos. Google produced the identifying information that is available to YouTube. YouTube does not verify the names and addresses a user provides when signing up for the YouTube service, and users may not provide information that accurately identifies them if they want to post content anonymously or for other reasons. Accordingly, verified name and address information is often not available to YouTube.

Mr. Gharavi has compelled Google to disclose the identifying information available to the service that stored the allegedly infringing material. A Section 512(h) subpoena does not authorize him to do more. If he wants additional information from service providers performing different functions, he must use a broader discovery authority. *See Charter*, 393 F.3d at 775 n.3.[2]

### AdSense Is a Distinct Service that Does Not Store User Content

AdSense did not store the allegedly infringing videos and does not store user content. AdSense is an advertising and monetization service separate and distinct from YouTube. Users form a separate relationship with AdSense by agreeing to AdSense <u>Terms</u> and <u>Policies</u>[3] and can submit different information when registering for AdSense. Users can use AdSense without using YouTube, and can use YouTube without using AdSense. A copyright holder could not properly submit a takedown notification to AdSense and, therefore, cannot use a Section 512(h) subpoena to compel AdSense to disclose information.

Mr. Gharavi argues that his subpoena compels Google to search the information maintained by *all* of its products and services and to disclose responsive information maintained *anywhere* within Google. He invokes Section 512(k)'s broad definition of "service provider," but ignores that it grants compulsory subpoena power only to certain types of service providers—those that store the infringing material. He urges the Court to adopt the corporate entity approach used for Local Civil Rule 3-15 disclosures rather than the functional service provider approach *Cox*, *Verizon*, and *Charter* all held Section 512(h) requires. Section 512(h) does not create a broad, enterprise-wide discovery authority applicable to all products and services owned by a corporate entity; it creates a narrow, limited authority applicable only to providers that perform the function

---

[1] *See* http://about.google/products/.

[2] Mr. Gharavi correctly observes that Google has disclosed AdSense billing profiles in response to Rule 45 subpoenas. If Mr. Gharavi initiated a case against the alleged infringer, then, under Court supervision and subject to appropriate protections, he could serve a Rule 45 subpoena on Google and, if otherwise permitted by law, Google would disclose AdSense information.

[3] *See* http://adsense.google.com/adsense/terms; http://support.google.com/adsense/answer/48182.

of storing the allegedly infringing material. *See Verizon*, 351 F.3d at 1233 ("We conclude from both the terms of § 512(h) and the overall structure of § 512 that . . . a subpoena may be issued only to an ISP engaged in storing on its servers material that is infringing or the subject of infringing activity.").

Were the corporate, enterprise-wide approach Mr. Gharavi urges correct, *Cox*, *Verizon*, and *Charter* all would have been decided differently. Cox, Verizon, and Charter all satisfy Section 512(k)'s broad definition of service provider, and each maintained within their corporate networks information identifying the alleged infringers. But the courts held that these service providers could not be compelled to disclose that information where it was maintained in connection with a transmission function as opposed to a storage function. As the Ninth Circuit observed, what matters is not what a service provider *is*; instead, "[w]hat matters is the function performed with respect to the alleged infringement at issue." *Cox*, 148 F.4th at 1067. AdSense does not perform a storage function with respect to the alleged infringement at issue. Therefore, Mr. Gharavi cannot use a Section 512(h) subpoena to compel Google to disclose identifying information maintained by AdSense.

Mr. Gharavi criticizes Google for engaging in "product-silo" evasion, but Congress, not Google, determined that a Section 512(h) "subpoena may issue to an ISP only under the prescribed conditions" that the provider stored the infringing material and received a takedown notification. *Charter*, 393 F.3d at 777.

### Objections and Sanctions

To the extent Mr. Gharavi suggests waiver or sanctions, Google's conduct has been proper and not sanctionable. Google engaged with Mr. Gharavi in good faith for weeks, produced responsive records, met and conferred, and clearly articulated its legal position regarding Section 512(h)'s limits.

### Conclusion

The statute and controlling case law clearly resolve this dispute. A Section 512(h) subpoena cannot compel a service like AdSense, which does not store the allegedly infringing information, to disclose information. To the extent the subpoena purports to compel the disclosure of AdSense information, it must be quashed.

**<u>Attestation Regarding Signatures - Local Rule 5-1(i)</u>**

  I, Nima Gharavi, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: January 26, 2026

By: /s/ Nima Gharavi
   Nima Gharavi, *pro se*

Petitioner

i